**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER L. CLAY, | ) | CASE NO. 1:25-CV-01945-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE |
| v. | ) | JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Christopher L. Clay ("Clay" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 7). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's statement of errors.

## II. Procedural History

On January 12, 2023, and March 31, 2023, Clay filed applications for DIB and SSI, respectively, alleging a disability onset date of September 9, 2021. (ECF No. 8, PageID #: 48). The applications were denied initially and upon reconsideration, and Clay requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 30, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 76-99). On August 30, 2024, the ALJ issued a written decision finding Clay was not

1

disabled. (*Id.* at PageID #: 48-71). The ALJ's decision became final on July 22, 2025, when the

Appeals Council declined further review. (*Id.* at PageID #: 32-34).

On September 15, 2025, Clay filed his Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11). Clay

asserts the following assignments of error:

> (1) The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.
>
> (2) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis

(ECF No. 10 at 1).

## III. Background

### A.  Relevant Disability Allegations and Hearing Testimony

The ALJ summarized Clay's symptom allegations from function reports and

Clay's hearing testimony:

> When the claimant filed for disability, he alleged cirrhosis of the liver, arthritis of the thoracic spine, generalized anxiety disorder, panic attacks, brain fog, and a weight of 316 pounds (Ex. 1E/2). In a subsequent report, the claimant indicated that between pain, discomfort, and general unwell feeling along with anxiety/panic attacks, focusing on tasks is nearly impossible, which limits his ability to work. His days are spent having anxiety/panic attacks, and sleeping off and on due to the inability to maintain a normal sleep pattern. He is not able to multi-task and problem solve at an acceptable pace. Panic/anxiety attacks come at unusual times and will prevent the ability to sleep; he also noted a general unwell feeling along with pain and discomfort in the abdominal area that impact his sleep. He has no appetite due to abdominal discomfort and pain. He no longer enjoys meals or eating because eating

usually causes pain and discomfort. Large groups of people tend to cause panic attacks. He noted limitations in walking, stair climbing, squatting, bending, kneeling, memory, completing tasks, concentration, and getting along with others. Anxiety causes lack of attention to detail. He alleged that he can walk two or three blocks before needing to stop and rest for two or three minutes. His ability to pay attention depends on whether he is having an anxiety attack; he can pay attention for at least 30 minutes if no anxiety is occurring. He endorsed stomach distress issues, tiredness, loss of appetite, diarrhea, and/or lightheadedness as medication side effects (Ex. 3E).

On May 5, 2024, Vicki Clay, the claimant's mother, completed a third-party function report in which she stated that the claimant is chronically exhausted and has difficulty maintaining restful sleep. The claimant also deals with pain that cannot be remedied with medications due to his liver damage from cirrhosis. His mental state is often depressed, and he can have wide mood swings from his continuing chronic pain and fatigue. After a night of inability to fall asleep, he is by around 4:00 a.m., and is exhausted, frustrated, and somewhat moody. He usually will come out of his room, at least once because his legs or back are bothering him an hour after laying down; he will get a drink of water and return to bed. He generally sleeps five to six hours but he is far from "rested" upon waking. Due to his erratic sleep, chronic pain, depression and moodiness, he is unable to maintain any task for long durations. He becomes agitated easily and exhausted. He has constant and consistent daily pain. He can do short grocery shopping alone but is exhausted upon returning. He has difficulty retaining some things so they put his doctor's appointments on a dry erase board and his mother reminds him of the scheduled visits. His mother noted limitations in lifting, squatting, standing, kneeling, stair climbing, memory, concentration, and getting along with others. Vicki Clay alleged that the claimant can walk approximately 750 feet before needing to stop and rest for 45 to 60 minutes. The claimant appears to pay attention well but he sometimes does not retain the information that was discussed. He does not finish what he starts. If he has a "road map" for reference, then he can follow written instructions well. He has memory lapses and can forget spoken information easily. He becomes agitated with stress and changes in routine. Most of his current medications cause stomach and intestinal issues along with the irritability from those conditions (Ex. 10E).

At the hearing on May 30, 2024, the claimant testified that he lives with his mother and stepfather. He is 1,000 days sober. He has

3

issues with sleep. In a typical day, he straightens the house when able, alternates between sitting and standing, and takes the dog out to the yard. He has some issues with personal care but he can manage them on his own. He only prepares microwaveable or "rehydrated" meals because his ability to focus is not great at times. He does minimal shopping or errands, about twice a month he might do some shopping for the house, mostly for himself so he has something to eat when he is able to. He has one friend who visits him about twice per week. The claimant watches TV and does "online reading." He was hospitalized while he was on vacation and discovered he had cirrhosis. He worked at a chemical plant so he was advised to remove himself due to the exposure to chemicals. He cannot work due to generalized pain, memory and cognitive issues due to his cirrhosis, and medication side effects of excessive bowel movements, which requires him to spend a lot of time in the restroom.

The pain is located in his abdominal area, liver, and spleen; he described the pain as being like a stomach flu. His lumbar mid/lower back is "fairly damaged" as well. He also has an "obstruction" in one leg, which could be peripheral artery disease, blood clots, or varicose veins. He just had testing done yesterday. He just had a blood test come back for severe anemia so he expects to see a hematologist soon. He takes medication for his mental health and he has been scheduled to see a counselor/therapist. He has telephone follow-up visits with a liver specialist every six weeks. He was taking Paxil as well as Wellbutrin, which he had to stop because it gave him high levels of anxiety so they stopped Wellbutrin. He takes Metformin for diabetes mellitus and watches his diet. He tests his blood sugar; this morning his blood sugar was 108. He is still taking iron two doses a day for anemia. He has not taken Zofran as much; he was getting high-level nausea from one of his medications and it subsided to mild after that medication was changed to Pantoprazole. He uses Lidoderm patches quite a bit. He takes Lisinopril. His acid reflux is still recurring but it is not eroding on his esophagus like in the past. He endorsed nausea and excessive sleepiness as medication side effects. He can lift and carry very little, maybe a gallon of milk. He uses a cane pretty much every day for swelling/edema in the left leg; the cane belongs to his mother and he has not been prescribed a cane yet. He can stand or walk without a cane but not for long periods. He can stand for 30 minutes, walk for 200 to 300 feet, and sit for 45 minutes. He is righthanded and has no apparent issues with grip. He can reach in front but it is very difficult to reach overhead as it would cause balance issues. He can go down stairs with great difficulty. He could not get down on his knees or crawl. He has

4

difficulty being around large groups of people as he tends to lose his focus and be claustrophobic, highly agitated, and angry. He has had a great difficulty remembering things lately; he has been told it is a side effect of cirrhosis. He forgets numbers and has difficulty with precise instructions. He tries to read in small 10 to 15 minutes' worth of science facts but he has trouble retaining the information. He experiences episodes of severe tiredness or fatigue so he takes naps quite a bit during the day, unintentionally; he falls asleep every two hours for a few minutes. He has daily pain in the abdomen that he described as a cramping pressure. He was hospitalized for blood in the stool. He has had esophageal varices but he has not had them since he quit drinking. He has regular repeat upper GI scopes to make sure he has no bleeding. He is currently seeking treatment for swelling in the legs.

(ECF No. 8, PageID #: 57-59).

## B. Relevant Medical Evidence

The ALJ also summarized Clay's health records and symptoms:

On September 5, 2021, the claimant was presented to the emergency department for an episode of black tarry stool and worsening abdominal pain for two days. He has a history of alcohol abuse with 12-ounce daily consumption of whiskey. He was admitted for concern for UGIB (upper gastrointestinal bleeding). A CT scan showed evidence of cirrhotic liver. His hemoglobin on admission was 12.6. His INR was elevated at 1.22, thrombocytopenia of 102, and AST of 57. His MELD-Na was 16 on admission. He was hemodynamically stable on admission. He was started on IV Nexium as well as Carafate, vitamins, and continuation of home blood pressure meds and diabetes mellitus medications. Concern was for UGIB secondary to alcohol gastritis versus peptic ulcer disease. Concern for variceal bleed was low considering lack of hematemesis, stable vitals, and relatively normal hemoglobin. Gastroenterology was consulted to follow the claimant. CIWA (Clinical Institute Withdrawal Assessment for Alcohol) protocol was initiated. During his hospital stay, he remained stable. He suffered from episodes of diaphoresis and nightmares but overall CIWA scores were low and no benzodiazepines were administered during his stay. He lacked any significant abdominal pain and reported overall asymptomatic, without chest pain/shortness of breath, nausea/vomiting/diarrhea, weakness/fatigue, syncope/lightheadedness. His melena resolved during stay, and he has had no tarry stools in the hospital. His hemoglobin was stable throughout his hospital stay.

5

Gastroenterology conducted an endoscopy, which showed non-bleeding varices, portal hypertensive gastropathy and esophagitis. Gastroenterology reported gastropathy seen could be cause of UGIB, and recommended an outpatient colonoscopy to rule out other cause. Hep A, Hep B, Hep C, and HIV serologies were negative. ANA, ceruloplasmin, IgG, antimitochondrial, and alpha1AT were unremarkable. He was discharged home on September 9, 2021 (Ex. 1F/138-140).

He followed up with primary care on September 13, 2021, with a history of hypertension, type II diabetes mellitus, and obesity. No further bleeding was noted. He has not had alcohol since being discharged and he was doing well. He reported that he feels he drank due to anxiety but drinking also exacerbated his anxiety as well. He agreed to start treatment for anxiety and was willing to do counseling. His current medications included Omeprazole (Prilosec) 40 mg daily, Metformin 500 mg twice daily, and Lisinopril 20 mg daily. He was started on Sertraline (Zoloft) 25 mg one tablet daily for two weeks then increase to two tablets daily. He was given the phone number to schedule with addiction counseling. Labs including A1C were also ordered (Ex. 1F/98-102). His A1C was 5.6 (Ex. 1F/212).

He presented to the hepatology clinic on September 20, 2021, for evaluation of alcoholic cirrhosis. They discussed his recent MELD score of 13 on September 8th and OLT listing criteria. Alcohol abstinence was stressed and he was started on Nadolol 20 mg daily for PHG (portal hypertensive gastropathy) (Ex. 1F/90-95)[.]

In January 2022, he reported that his blood pressure has been stable. He asked for an eye referral so he was referred to ophthalmology (Ex. 1F/77-80). He was doing well in February 2022. He endorsed complete sobriety as he has not had a drink since September 2021. He had a normal physical exam. A CT scan was ordered for liver cirrhosis surveillance (Ex. 1F/72-77).

He complained of some "joint pains," mostly in the lower back and bilateral hips to primary care in early May 2022. He also noted vague symptoms of memory loss/brain fog. He will walk into a room and "forget why I am there" but he had no issues with getting lost or neurological issues. He also endorsed some depression but declined medications or a counseling referral for now. He had no thoughts or plans of self-harm or auditory/visual hallucinations. His blood pressure was slightly elevated at 133/87. His Body Mass Index (BMI) was 48.5. He had an unremarkable exam with a normal psychiatric exam. He was referred to the Pain and Healing

6

Center for arthralgia and to neurology for memory loss. X-rays of the bilateral hips and lumbar spine were also ordered (Ex. 1F/59-64). The x-ray of the lumbar spine showed minimal dextrocurvature in the upper lumbar spine, mild multilevel degenerative disc disease most pronounced in the upper lumbar/lower thoracic region with small endplate spurring, mild multilevel facet arthropathy, and a tiny punctate calcific density to the right of the L4 vertebral body that is nonspecific and of uncertain etiology. No acute osseous abnormality was identified on the x-ray of the hips (Ex. 1F/282-283).

At a hepatology visit in mid-May 2022, he reported that his sleeping has "flipped" as he is awake at night and sleepy during the day. He also endorsed a mental fog. He had trace edema, palmar erythema, and spider angiomata on exam. He was started on a trial of Lactulose for mild "fogginess." It was currently too early for a liver transplant but he would need to be followed closely with MELD labs every three months and an ultrasound/AFP (Alpha Fetoprotein) test every six months (Ex. 1F/51-58).

On May 25, 2022, he presented to podiatry for a yearly diabetic foot exam. He complained of edema to his legs due to cirrhosis but reported that his blood sugars are well controlled. He denied numbness, burning, or tingling to his lower extremity. His A1C last month was high at 5.7. He complained of dry itchy skin to the bottom of his left foot. He had 1+ pitting edema bilaterally on exam. Scaling to the plantar left foot and a small abrasion on the left sub-first metatarsal head were noted due to dry skin. All toenails were of normal thickness, length, and color. He had normal muscle strength for all groups tested. He was prescribed two percent ketoconazole shampoo to apply to the left foot twice a day. Epson salt soaks for 15 to 20 minutes twice per day were also recommended (Ex. 1F/47-50).

On October 5, 2022, he presented to neurology for evaluation and management of memory concerns that began six months ago. He loses his train of thought frequently and others have seen him "spaced out" on rare occasions. He loses items constantly but he does not get lost. He is able to manage his own hygiene, dress, eat, do his own finances and manage his medications. He also has no driving issues. He described his sleep quality as "a mess," getting four-and-a-half to five hours per night, though he has swings of sleeping at least 12 hours or less than one hour. He had never been tested for obstructive sleep apnea but he does snore and have daytime sleepiness as well as occasional morning headaches. He scored a perfect 30 out of 30 on the mini-mental status exam. His

plantar reflexes were mute bilaterally and he had absent reflexes in the Achilles bilaterally. Slightly diminished sensation to temperature and vibration were noted in the distal bilateral lower extremities. He also had a sway with Romberg testing. However, he was able to rise unassisted and he had a normal stance and gait. Neurology suspected a multifactorial component to attentiveness errors and noted contributing factors of history of alcohol abuse, hepatic cirrhosis, poor quality sleep, suspected untreated obstructive sleep apnea, anxiety/depression, and recent stressors. Labs and a sleep study were ordered (Ex. 1F/34-38).

At a primary care visit in October 2022, he complained of increased depression lately due to financial stressors and illnesses in the family. However, he was not interested in increasing Zoloft or pursuing counseling services at this time. He reported having felt "nauseated in the morning" for the last six to eight months, which will sometimes last throughout the day. However, he has never thrown up and no diarrhea, constipation, fevers, or abdominal pain were noted. He had an unremarkable exam with a normal psychiatric exam. His blood pressure was normal and his BMI was 48.99. Labs including A1C were ordered. He was started on Ondansetron (Zofran) 4 mg one tablet daily as needed for nausea. A sleep study was also recommended as obstructive sleep apnea was suspected (Ex. 1F/29-33). His A1C improved to 5.0 (Ex. 1F/188).

He continued to have daytime fatigue and snoring with frequent night awakenings in January 2023. However, he still had not scheduled the sleep study so he was reminded to do so. He noted some anxiety related to claustrophobia and wanted to get counseling. He also complained of chronic back pain that is worse when sitting for long periods of time and will radiate down the right leg. He had an unremarkable exam. His blood pressure was normal and his BMI was 47.92. He was prescribed a five percent Lidoderm patch for chronic left-sided low back pain with let-sided sciatica. He was also referred to behavioral health for his anxiety (Ex. 1F/18-22). On February 6, 2023, he was noted to have been sober for one year and five months (Ex. 1F/17).

He followed up with hepatology in March 2023 and reported no improvement with the trial of Lactulose. He complained of general discomfort/burning in the epigastric region and left upper quadrant. He has trouble eating because he feels full or constipated. He has been taking Omeprazole without relief. His BMI was 45.73. His blood pressure was slightly elevated at 145/61. He had an unremarkable exam with a normal abdominal exam. He was

8

referred to gastroenterology for his complaints of abdominal pain (Ex. 1F/8-16).

At a primary care visit in April 2023, he reported that he has been working with a friend to lose weight by increasing his activity. He was still sober. He had not yet scheduled the sleep study. He had an unremarkable exam with normal blood pressure. His BMI was 46.31. Labs were ordered for his diabetes mellitus (Ex. 4F/15-19). His A1C was stable at 5.0 (Ex. 4F/26).

In June 2023, he complained of some problems with anxiety. He noted that Zoloft did help with the anxiety and he does not want to give it up but it has caused "some awkward moments." He added that his sleep is "all over the place" and he is "in a constant state of exhaustion." He does not have an appetite or urge to eat. He does make sure he takes in vitamins and protein 8as [sic] well as a meal replacement drink. He had an unremarkable mental status exam. Zoloft was discontinued with a slow taper and he was started on Paxil 10 mg one-half tablet for 14 days then increase to one tablet daily (Ex. 4F/6-14).

He continued to have chronic bilateral hip and lumbar back pain in July 2023 but no weakness, numbness, tingling, saddle anesthesia, or bowel/bladder incontinence. He reported that his symptoms are "better" after switching from Zoloft to Paxil. He had an unremarkable exam. His blood pressure was normal and his BMI was 45.88. He was continued on Paxil and Metformin as prescribed. He was referred back to ophthalmology and neurology. X-rays of the bilateral hips and lumbar spine were also ordered again (Ex. 6F/55-60). His hip x-rays were unremarkable. An x-ray of the lumbar spine demonstrated lumbar minimal dextroscoliosis in the lumbar spine and mild to moderate L1-2 spondylosis but no compression deformity or significant listhesis (Ex. 6F/70-72).

On August 28, 2023, he presented to pain management for low back and hip pain. He described the pain as a constant ache, worse with standing, walking, and sitting, and better with rest. His left leg feels weaker, which significantly limits his ability to bear weight on the leg. He also endorsed a longstanding history of night sweats but no fevers. On physical examination, he had tenderness of the lumbosacral spinous processes and over the lumbar paraspinal muscles, greater trochanters, and IT (iliotibial) band. He had decreased 4*/5 giveway on the left lower extremity but normal 5/5 strength on the right. He had decreased sensation on the left L3-S1 dermatomes diffusely but intact sensation to light touch on the right. He had limited range of motion in all planes secondary to

9

pain but no back pain with lumbar flexion, extension, rotation, or side bend to the left or right. He had a positive facet loading on the right but negative on the left, a positive FABER on the left, a positive thigh thrust bilaterally, a positive log roll and FADIR to the left, and reduced internal rotation hip. He had a negative straight leg raise bilaterally as well as a grossly normal non-antalgic gait and no use of an assistive device. An MRI of the lumbar spine was ordered given the neurological deficits on exam. He was also referred to physical therapy (Ex. 6F/46-49). The MRI revealed a moderate-sized right subarticular disc extrusion at T10-11 with caudal migration to the T11 vertebral body, causing severe right subarticular zone stenosis and leftward deviation of the spinal cord. There was no spinal cord compression (Ex. 6F/67-68).

He also saw behavioral health in August 2023 and complained of feeling like he gets stuck in a depression easier than he used to but this has been better. He is two years sober and he does not have any cravings. He noted that the medication change was a little rough at first but Paxil is helping. He endorsed fleeting passive suicidal ideation but denied plans, intent, or access to firearms. His blood pressure was normal and his BMI was 46.14. He had an unremarkable mental status exam and he was continued on Paxil as prescribed (Ex. 6F/38-46).

He was still having left-sided low back and lateral hip pain in October 2023; he also endorsed weakness along the left lower extremity. However, he did not start physical therapy. He had a normal physical exam. Pain management encouraged him to start physical therapy and discussed the importance of weight loss for spine and overall health (Ex. 6F/22-25).

Hepatology referred him to nutrition and weight management in October 2023 (Ex. 6F/7-16).

He had no background diabetic retinopathy in either eye at a diabetic eye exam in November 2023. His A1C had also improved further to 4.3 (Ex. 7F/15-16).

In December 2023, he reported struggling a bit recently, stating "I can't even handle the simplest of things. I am down." He attributed some of it to the holidays. He sleeps for "hours and hours" but he is still exhausted when he wakes up. He also has no appetite. He endorsed fleeting passive suicidal ideation but denied plans, intent, or access to firearms. He had a depressed mood and tearful affect but he was cooperative. Paxil was increased to 20 mg daily and he was started on Wellbutrin XL 150 mg daily (Ex. 7F/7-15).

10

At a primary care visit in early January 2024, he complained of sleeping issues going on "months." He goes to bed "roughly" at 11 p.m., lies awake, and then falls asleep around 7 a.m., and stays asleep until 2 p.m. He feels overall very fatigued/tired throughout the day. He denied falling asleep unintentionally but he always feels "very tired." He has a sleep study scheduled for March but he noted that he does not feel like he snores much anymore. He had a normal physical exam. His speech was tangential but his psychiatric exam was otherwise normal. His blood pressure was normal and his BMI was 45.46 (Ex. 8F/89-94). He saw pain management later that month and reported a gradually worsening course. He rated the severity of his pain level as a seven out of ten. He described his pain as aching and soreness with radiation to the legs and with weakness of the legs that is made worse by standing from a seated position and walking mostly on the left side. He felt his left leg is very unstable. He had pain in the lumbar spine with spine extension, lateral movements, and rotation as well as tenderness to palpation in the mid thoracic region. He had tenderness to palpation and limited range of motion in the left knee as well as an antalgic gait. However, he had normal strength in all extremities. He was advised to return as needed after physical therapy (Ex. 8F/83-88).

In February 2024, he reported that his sleep is completely reverse and Wellbutrin is making his mind race. He felt overly sensitive to outside stressors. He described his mood as "panic" but it was euthymic. His affect was tearful but he was still cooperative. He was continued on Paxil 20 mg daily but Wellbutrin was discontinued (Ex. 8F/68-77).

On March 5, 2024, he presented to physical therapy for lumbar radiculopathy. He rated the severity of his pain level as a seven out of ten. He demonstrated impairments of pain, decreased range of motion, decreased strength, decreased flexibility, decreased function, postural deviation, decreased gait status, lack of home exercise program, and poor body mechanics. Physical therapy was recommended one to two times per week for seven to eight visits (Ex. 8F/62-65).

A polysomnogram performed on March 8, 2024, revealed moderate to severe obstructive sleep apnea (Ex. 8F/34, 61). On April 8, 2024, he presented to sleep medicine for a comprehensive sleep evaluation and reported snoring, witnessed apneas, gasping/choking, unrefreshing sleep, difficulty staying asleep, morning dry mouth, morning headache, restless leg syndrome,

sleep walking, and sleep talking; the sleep walking episode was about one week ago. A trial of ACPAP at 6 to 16 cm H2O was recommended (Ex. 8F/33-36).

At a behavioral health visit in April 2022, he reported that the Paxil is better than taking the Wellbutrin. He still had problems with sleep and appetite. He had an unremarkable mental status exam. He was continued on Paxil as prescribed (Ex. 8F/37-46).

He followed up with hepatology in April 2024 and reported day/night reversal and thinking he talked to someone who was not there. He had an unremarkable exam with normal blood pressure and a BMI of 45.75. Labs and an ultrasound of the liver, gallbladder, and pancreas were ordered (Ex. 8F/13-23). The ultrasound showed a coarsened irregular liver consistent with cirrhosis but no suspicious hepatic lesion (Ex. 8F/1-2).

(ECF No. 8, PageID #: 59-64).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2.  The claimant has not engaged in substantial gainful activity since September 9, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments: liver cirrhosis and steatosis; hypertension; diabetes mellitus; thoracic spine disc extrusion; lumbar spine spondylosis; obstructive sleep apnea; obesity, major depressive disorder; generalized anxiety disorder; panic disorder; alcohol use disorder in reported remission (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and

12

416.967(a) except: occasionally climbing ramps and stairs, but no ladders, ropes, or scaffolding; could frequently balance and stoop; could occasionally kneel, crouch, and crawl; would need to avoid unprotected heights and hazardous moving machinery; and would only have occasional workplace changes, no strict production rate or hourly quotas, and only occasional interaction with public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    …

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8, PageID #: 50-52, 57, 69-70).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007)

(citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.  Discussion**

Clay raises two issues on appeal, arguing (1) the ALJ failed to consider all his impairments in formulating the RFC as required by Social Security Ruling ("SSR") 96-8p, and

14

(2) the ALJ failed to properly consider his symptom allegations in accordance with SSR 16-3p. (ECF No. 10 at 1).

### 1. Consideration of All Impairments

Plaintiff first argues that the ALJ improperly concluded that his venous insufficiency of the bilateral lower extremities was a non-severe impairment, and the ALJ "failed to consider this impairment and its related limitations when forming her RFC." (ECF No. 10 at 8-10). The Commissioner responds that the ALJ "reasonably determined that Plaintiff's venous insufficiency of the bilateral lower extremities was not a severe impairment" based on "the lack of significant treatment for and the lack of significant functional limitation from the impairment since alleged onset date." (ECF No. 11 at 7). While Plaintiff asserts that his venous insufficiency imposed additional limitations, the Commissioner argues that Plaintiff "provides no objective evidentiary support for this assertion, and there appears to be none." (*Id.* at 9).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citation omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citation modified). Typically, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" if the ALJ considered all the claimant's impairments in the remaining steps. *Id.* (citation modified).

15

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the Court finds no error in the ALJ's consideration of Plaintiff's venous insufficiency. In concluding such was not a severe impairment at step two, the ALJ cited the lack of specific treatment and gaps in Plaintiff's complaints about edema to support that this impairment caused no more than a minimal limitation on Plaintiff's ability to work. (ECF No. 8, PageID #: 51; *see id.* at PageID #: 360-62, 382-86, 443-49, 1051). In arguing that his venous insufficiency was severe, Plaintiff relies on the same medical notes cited by the ALJ, which reflect that Plaintiff suffered from the impairment but do not include any limitations connected to such that would support a finding that such was a severe impairment. Further, even if the ALJ erred at step two, any error was harmless because the ALJ concluded Plaintiff had at least one severe impairment and proceeded through the sequential evaluation. *Kestel*, 756 F. App'x at 597.

Plaintiff's argument that the ALJ failed to consider his venous insufficiency at step four

16

also fails. The Sixth Circuit has previously held that an "ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] nonsevere impairments at step two of her analysis" support that the ALJ complied with the requirement that she consider all impairments in crafting the RFC. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Here, in setting forth the relevant law, the ALJ recognized the requirement that she "consider all of the claimant's impairments, including impairments that are not severe" and cited SSR 96-8p. (ECF No. 8, PageID #: 50). As discussed above, the ALJ concluded that Plaintiff did not have significant limitations from his venous insufficiency but indicated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity. (*Id.* at PageID #: 52). The ALJ was not required to provide any further discussion or explanation regarding her consideration of Plaintiff's venous insufficiency, especially given Plaintiff's failure to cite any evidence supporting additional limitations that should have been considered due to this impairment.

### 2.  Consideration of Plaintiff's Symptoms

Plaintiff next argues that the ALJ failed to account for his symptoms and related pain, which was documented in the medical record, when formulating the RFC and "failed to articulate any supportable rationale for her finding that Plaintiff's statements … were not entirely consistent with the medical evidence." (ECF No. 10 at 10-16). The Commissioner responds that "[d]espite Plaintiff's assertions otherwise, the ALJ properly evaluated his subjective symptoms, including pain, and an ALJ's subjective symptom determination is given great weight and deference." (ECF No. 11 at 9).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v.*

*Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ concluded that while Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record evidence. (ECF No. 8, PageID #: 59). The ALJ noted that the medical record reflected "a routine and conservative treatment history as well as generally benign physical and mental health examinations" and there was a lack of hospitalizations or emergent care since the alleged onset date. (*Id.*). The ALJ provided a detailed review of the medical records, including Plaintiff's statements that he was doing well; the fact that he declined medications or counseling; reports that he could manage his own hygiene, finances, and medications as well as dress and eat without assistance; his perfect score on a mini-mental status exam; and relatively normal objective findings. (*Id.* at PageID #: 59-64; *see id.* at PageID #: 364, 367, 369, 371-72, 397-98, 892-95).

The ALJ's detailed discussion shows that she considered Plaintiff's symptoms in accordance with SSR 16-3p. The ALJ considered multiple of the relevant factors, including the objective medical evidence, the medical opinions, and Plaintiff's own reports to his providers. Substantial evidence supports the ALJ's conclusion, and the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits.  Plaintiff's Complaint is DISMISSED.

Dated: May 8, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

19